UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

**FILED**

JAN 2 6 2009

~~~~~~~~~~
CLERK

| | | |
|---|---|---|
| Kimberli Trierweiler, | ) | *CIV 09-1001* |
| Plaintiff, | ) | |
| vs. | ) | COMPLAINT |
| Wells Fargo Bank, | ) | |
| Defendant. | ) | |

COMES NOW Kimberli Trierweiler, plaintiff, and alleges and states as follows:

### JURISDICTION

1. Kimberli Trierweiler ["Trierweiler"] is an adult female residing in Watertown, SD.

2. Wells Fargo Bank["Wells Fargo"] is a federally insured bank operating throughout South Dakota, including Watertown, South Dakota.

3. On or about October 2, 2007, Trierweiler timely filed a charge of pregnancy discrimination against Wells Fargo with the South Dakota Division of Human Rights.

4. On November18, 2007 Trierweiler received a Notice of Right to Sue from the EEOC.

5. This Court has jurisdiction of this matter pursuant to 28 USCA § 1331.

## PREGNANCY DISCRIMINATION IN EMPLOYMENT
### 42 USCA § 2000e(k)

6.    Trierweiler was employed by Wells Fargo as a teller in a Watertown branch bank on October 9, 2006.

7.    During her employment with Wells Fargo, Trierweiler performed her job duties in a matter that met or exceeded performance expectations.

8.    Prior informing her supervisor of her pregnancy, Trierweiler had received positive evaluations and awards for her performance.

9.    Prior informing her supervisor of her pregnancy, Trierweiler had not received any disciplinary action.

10.    Prior to informing her supervisor of her pregnancy, Trierweiler had been provided with an understanding of Wells Fargo's PTO leave policy by her supervisor Mandy Maynard.

11.    Prior to informing her supervisor of her pregnancy, Maynard had approved all  Trierweiler's leave requests whether they were related to personal matters or the weather.

12.    In November or December 2006, Trierweiler informed Maynard that she was pregnant and due to have her baby on approximately July 28, 2007.

13.    Trierweiler advised Maynard at that she planned to save up  five (5) PTO days to use as an addition to her maternity leave as permitted by company policy.

14.    After Trierweiler informed Wells Fargo that she was pregnant, Maynard began treating her differently than she treated other employees in terms of  documenting performance, allowing PTO leave and applying disciplinary actions.

2

15.  Other employees supervised by Maynard were allowed to violate company policies without disciplinary action and were accommodated when they needed leave for personal or weather-related reasons.

16.  On or about May 11, 2007, Maynard called Trierweiler into a meeting and informed her that Wells Fargo had decided that Trierweiler could not miss one more day of work until December 2007 or she would be fired.

17.  Trierweiler reasonably believed that company policy allowed her maternity leave regardless of her PTO leave.

18.  No other employee was prohibited from using PTO or maternity leave.

19.  To the best of Trierweiler's knowledge, no other employee supervised by Maynard used maternity leave.

20.  Maynard's disciplinary action against Trierweiler was motivated at least in part by Trierweiler's status as a pregnant employee who was planning to use the company's maternity leave.

21.  Given Treilweiler's status as a pregnant person, it was medically impossible for her not to miss a day of work between May and December 2007 when she was due to have a baby in July 2007.

22.  Employees who were not pregnant were not threatened with termination for exercising medical or PTO leave unrelated to pregnancy.

23. Trierweiler became so upset about Maynard's disciplinary action and being required to attend work regardless of the birth of her child that she became physically ill.

24.  Trierweiler required medical treatment on May 14, 2007.  She called Maynard to inform her that she was ill, receiving medical treatment and  required medical

3

leave until May 17, 2007.   Maynard was obviously angry, said that the leave was a problem and did not ask  Trierweiler about returning to work.

25.   Trierweiler reasonably believed that Maynard's angry reaction to her medical leave meant that Trierweiler she was terminated for missing work as per Maynard's May 11, 2007 disciplinary action.

26.   On our about May 14, 2007 Trierweiler was constructively discharged from employment.

27.   Trierweiler turned in her Wells Fargo keys at the branch bank on May 18, 2007.

28.   Trierweiler reasonably believed she had been terminated for taking a medical leave as per Maynard's disciplinary action because Wells Fargo made no effort to contact her regarding her employment status.

29.   Wells Fargo records indicate that Trierweiler was formally terminated on  May 18, 2007.

30.  Wells Fargo's actions were willful, malicious and designed to force Trierweiler to quit her position.

31.  As a result of Wells Fargo's discriminatory actions, Trierweiler has suffered the following damages:

> a loss of wages;
>
> b. loss of employment benefits;
>
> c. severe emotional distress;
>
> d. health related problems caused by stress; and
>
> e. loss of enjoyment of life.

WHEREFORE,  Trierweiler prays for judgment against Wells Fargo as follows:

    a.  for a trial by jury on the merits of her claim;

    b.  for compensatory damages in such amount as the evidence at trial may show;

    c.  for other damages, including but not limited to, punitive damages and those

damages allowed by 42 U.S.C. §2000 *et seq* , the Civil Rights Act of 1991, Public Law

162-166, and any other pertinent and applicable statute, rule or regulation, whether state

or federal; and

    d.  for costs and disbursements incurred herein, including prejudgment interest

and reasonable attorney fees, and for such other and further relief as the Court may deem

just.

Dated this __22__ day of January,  2009.

JOHNSON EKLUND LAW OFFICE

Stephanie E. Pochop
P.O. Box 149
Gregory, SD  57533
Attorney for Plaintiff