UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION


FILED
JAN 19 2011

******************************************************************

| | | |
|---|---|---|
| KIMBERLI TRIERWEILER, | * | CIV 09-1001 |
| Plaintiff, | * | |
| -vs.- | * | MEMORANDUM OPINION AND ORDER |
| WELLS FARGO BANK, | * | |
| Defendant. | * | |

******************************************************************

Plaintiff filed a complaint alleging discrimination under the Pregnancy Discrimination Act, 42 U.S.C. § 2003(k). Defendant filed a motion for summary judgment. Defendant also filed a motion to strike attachments to plaintiff's appendix in support of her responsive statement of facts.

## FACTS

Plaintiff was hired by defendant as a teller at the Watertown, South Dakota, Branch of Wells Fargo Bank on October 6, 2006. She received a copy of the personnel policy handbook setting forth the absenteeism policy. The relevant portions of that policy are set forth below:

> **Attendance and Punctuality** . . . Regular and dependable attendance is an essential function of your job at Wells Fargo.
> **PTO** Some of your absences may be considered paid time under the PTO program . . . Check with your supervisor to see how much PTO you have available or how much you have remaining for the year . . .
> **Unscheduled Absences** . . . even if absences are covered by PTO and you report them to your supervisor in a timely manner, they can be grounds for corrective action. Of course, occasionally you may be ill, injured, or unable to work because of an illness in your immediate family or other personal emergency. If you're going to be late for work or absent, contact your supervisor as soon as possible -- no later than your normal starting time that day. You must make every effort to reach your supervisor personally. *Important: It's your responsibility to make sure your supervisor and business unit are notified promptly about your absence or tardiness. If you don't personally notify your supervisor of your absence*

*or tardiness in a timely manner it can be grounds for corrective action, which may include termination of your employment.*

**Excessive Absences** Each region or line of business may establish its own guidelines for attendance and reasonable absences. If you don't know the guidelines for your area, ask your supervisor. *Important: Excessive absences or tardiness – including repeated incidents or a pattern of incidents – is grounds for corrective action, which may include termination of your employment . . .*

**Time Off** . . . In this chapter, you'll find information about the different types of paid and unpaid time off available to you . . .

**Unscheduled Absences** . . . Regular and dependable attendance is an essential function of your job at Wells Fargo, and for this reason unscheduled absences may be grounds for corrective action . . . *Important . . . excessive absences or tardiness – including repeated absences or a pattern of absences – are grounds for corrective action, which may include termination of your employment.*

**Paid Time Off (PTO)** Wells Fargo provides you with Paid time Off (abbreviated to "PTO") each calendar year to use for time away from work. You may use this time for any number of reasons, including, for example:
- Vacation
- Your illness (including any scheduled workdays missed during the waiting period for the Short Term Disability Plan)
- A family Member's illness
- School activities or conferences
- Variable holidays
- Religious observances
- Personal business
- Weather problems

**Scheduling** You'll schedule your PTO in advance, with your supervisor's approval. The only exception to this requirement is an illness or other emergency . . .

**Performance Counseling & Corrective Action** . . . each of us is expected to meet standards of performance, behavior, and attendance . . . In most cases, if you have a performance issue your supervisor will work with you to provide the appropriate performance counseling and corrective action so that you have the opportunity to improve. *However, the policy is not progressive.* This means we reserve the right to escalate the process or use any part of it that we feel is appropriate for the situation – and, if necessary, to terminate employment without implementing performance counseling and corrective action. This is consistent with our "employment at will" policy . . .

> **Informal Counseling** In most cases, if your ... attendance doesn't meet specified requirements, your supervisor will meet with you to discuss the issue ...
> **Formal Warning** If ... attendance shows no signs of improvement or keeps declining after informal counseling ... your supervisor may document the situation in a written formal warning ...
> **Final Notice** Some situations may require corrective action just short of termination. In a situation like this, you may receive a final notice advising you that if the situation occurs again at any time during your Wells Fargo employment, your employment will be terminated immediately. This notice is typically a written memo ...
> **Termination** If you don't achieve the improvement in ... attendance that was outlined in the informal counseling or formal warning, your employment may be terminated.

In addition to the foregoing, the handbook also contained a section on unpaid medical leave and paid short term disability leave, both of which were available for pregnancy related conditions. There was a five day waiting period from the onset of short term disability until payment was to begin under the short term disability plan. Employees were required to use PTO during those days, if the employee had any PTO remaining. Otherwise, those days were unpaid.

Plaintiff was eligible for 20 days (160 hours) paid time off ("PTO") per year. Those days were pro rated during 2006 after a one month waiting period and plaintiff therefore only received two days (16 hours) PTO. Plaintiff used all of her paid time and also had 4.5 days unpaid absences in 2006. The employee handbook set forth that, upon early termination, an employee would be required to pay back PTO used but not accrued.

In December 2006, plaintiff informed defendant that she was pregnant. She was not eligible for leave under the Family Medical Leave Act because she had not been employed with Wells Fargo one year. She was eligible instead for maternity leave under defendant's short term disability ("STD") plan. Plaintiff was advised that there is a five day waiting period until STD benefits begin and that she would have to use PTO to be paid for those days. She was not told that, if she had no PTO left, she could use unpaid time off. She never sought clarification from anyone about maternity leave or the STD plan. She advised her supervisors that she planned to reserve five of her 2007 PTO days (40 hours) to cover her salary during the waiting period.

3

On April 17, 2007, plaintiff's supervisors scheduled a visit with plaintiff about her attendance. During the first three and one half months, plaintiff had incurred two days of unexcused absences, four days absence due to sickness, two days absence due to moving, three days absence due to weather, and one half day absence due to a doctor's appointment. Plaintiff also had scheduled two days at the end of April to move and another absence to be at home for the cable to be hooked up. Plaintiff scheduled her doctor's appointments during her lunch hour and would come in early or work late so as not to use PTO for that time off.

The April 17th discussion was "light," "quick," and not confrontational. As a result of the meeting, plaintiff understood that she was close to using up all her allotted PTO hours, taking into account that she wanted to have 40 hours available to cover her salary during the STD waiting period. Plaintiff was told at that meeting that she "needed to manage" her absences.

The parties dispute how many PTO hours plaintiff had used (and had scheduled to use in the future) at the time of the April 17th meeting. Whether defendant actually knew the exact PTO hours plaintiff had remaining is irrelevant. The hours used each pay period are shown on plaintiff's bi-weekly pay stubs and she herself would have known how many hours she had remaining. She does not dispute that she was told at the April meeting that she had used up most of her PTO and, regardless of the exact number of hours remaining, she agreed that she had in fact used most of her PTO by the time of that meeting. Defendant recorded that the meeting constituted a verbal warning.

On May 9, 2007, plaintiff stayed home with her sick child, using eight hours PTO for this unscheduled absence. Defendant's records show that on May 9, 2007, defendant intended to have plaintiff's supervisor visit with plaintiff and "tell her that if she has one more absence -- formal warning."

On May 11, 2007, plaintiff had a meeting with one of her supervisors. She was handed a letter of recommendation from a satisfied customer. Plaintiff testified that when she stood to leave, her supervisor said:

> Oh, and by the way, you can't miss one more day of work until December and she was smirking and smiling at me the whole time. And I said what are you talking about. She said because you don't have any PTO time left. So I said I'm calling human resources and she said there is nobody to talk

4

> to because this came from human resources, so I went out and finished my shift.

Plaintiff claims she was told "I'm done if I miss one more day of work." Plaintiff contends that, before that meeting, she had been asked six times by two different managers about how long she intended to take for maternity leave.

Defendant disputes plaintiff's rendition of that meeting. Defendant claims that, at the May 11 meeting, plaintiff's supervisor advised plaintiff that if she has one more absence, plaintiff would receive a formal warning.

Plaintiff called her supervisor on Monday, May 14, 2007, and left a message that her doctor told her to take off work through Thursday. Defendant returned the call on Tuesday morning and left a message that "she doesn't know how that's going to work out for me."

During the days plaintiff was absent for a pregnancy related medical condition (May 14-19), her supervisor was in contact with defendant's human resources manager to determine what, if any action, should or could be taken as a result of plaintiff's non-pregnancy related absences and the possibility that plaintiff may have additional pregnancy related absences. A May 15 internal email reflects, and plaintiff did not put forth any evidence to dispute, that:

> She only has 4 days of PTO left at this point and its only May. Baby is due in July. The snow days and fog were not bad enough for her to be out all day . . . other team members easily made it in. She has a tendency to just call in when she doesn't feel like coming in and makes little to no effort to come in later in the day . . . we feel that she has been abusing this . . . she has a spouse that can assist when the child is sick (she has told Mandy this but doesn't do it). She seems to feel that if she uses up her PTO then she'll take unpaid time off. She also made a comment to Mandy last week that she wants to know what date she has to work until so that she won't have to pay back her PTO . . . Her absences and the need to save 5 days for her disability have all been discussed with her . . .

The decision was made to have defendant's Work Ability consultants involved to review a possible temporary accommodation.

On May 18, 2007, the date plaintiff told defendant she would be returning to work, plaintiff drove up to the auto bank, handed her keys to a teller, and said "Please make sure that Mandy [supervisor] gets these keys. I am done. I can't handle it." Plaintiff then left a telephone message for her supervisor to put her personal effects together to give to another teller to drop off

5

at plaintiff's house. That was accomplished that same day. Defendant did not formally terminate plaintiff's employment or do anything to alter or affect a term, condition, or privilege of her employment.

## DECISION

Defendant seeks to strike documents that were presented by defendant to the EEOC. Deposition exhibit 17 (Tab 12 of Doc. 31) is a March 6, 2008, letter from defendant to the EEOC investigator setting forth defendant's claim that plaintiff had used 122.75 hours of PTO and seven hours of miscellaneous absence during 2007. Deposition exhibit 9 (Tab 13 of Doc. 31) is a Wells Fargo time off calendar for plaintiff for 2006 and 2007. Plaintiff suggests in her statement of material facts that defendant presented different calculations to the EEOC and therefore did not know, as of May 2007, how much PTO plaintiff had used.

Defendant contends that this Court cannot consider documents presented to the EEOC, citing 42 U.S.C. § 2000e-5(b) which provides, in relevant part:

> If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.

Plaintiff did not submit anything said or done by the Commission. She submitted documents which were prepared by Wells Fargo documenting plaintiff's alleged PTO hours used and other absences (Wells Fargo contends that these were prepared at the time of the EEOC investigation, not at the time of employment). Plaintiff submitted these documents in support of her claim that her alleged absences were a pretext for pregnancy discrimination. I find that such documents would have been discoverable and are therefore admissible. The motion to strike should be denied. As will be detailed later in this opinion, those documents do not create any genuine issue of material fact.

The summary judgment standard is well known and has been set forth by this court in numerous opinions. *See* Hanson v. North Star Mutual Insurance Co., 1999 DSD 34 ¶ 8, 71 F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Trip County, 1998 DSD 38 ¶ 8, 66

F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), and Smith v. Horton Industries, 1998 DSD 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). In considering the motion for summary judgment, this Court must view the facts in the light most favorable to plaintiff and give plaintiff the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-98.

Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et seq.*, prohibits discrimination in employment on the basis, *inter alia*, of an individual's sex.

> As amended by the Pregnancy Discrimination Act, the sex discrimination proscribed by Title VII includes discrimination on the basis of "pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work."

Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 435 (8th Cir. 1998); 42 U.S.C. § 2000e(k). The 1991 Pregnancy Discrimination Act amended Title VII to make it "an unlawful employment practice to discharge an individual . . . 'because of . . . pregnancy, childbirth, or related medical conditions.'" Roberts v. Park Nicollet Health Services, 528 F.3d 1123, 1127 (8th Cir. 2008); 42 U.S.C. §§ 2000e(k), 2000e-2(a)(1).

We analyze Title VII claims under the traditional burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

> Under this framework, a Title VII plaintiff has the initial burden of establishing a prima facie case of discrimination. If a prima facie case is established, a burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for [its action]. If the employer makes such a showing, the plaintiff must then demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination.

Qamhiyah v. Iowa State University of Science and Technology, 566 F.3d 733, 746 (8th Cir. 2009) (internal citations omitted). Under McDonnell Douglas, plaintiff may satisfy her burden of establishing a prima facie case of pregnancy discrimination by showing:

> 1) that she was pregnant;
> 2) that she was qualified for her position or meeting her employer's legitimate job expectations;
> 3) that she was discharged or suffered some other adverse employment action; and
> 4) there is a nexus between her pregnancy and the adverse employment decision or evidence that someone who was not pregnant received more favorable treatment.

*See* Bergstrom-Elk v. Best Oil Co., 153 F.3d 851, 857 (8th Cir. 1998), Venturelli v. ARC Community Services, Inc., 350 F.3d 592, 602 (7th Cir. 2003), Tysinger v. Police Dept. of City of Zanesville, 463 F.3d 569, 573 (6th Cir. 2006), Spivey v. Beverly Enterprises, Inc., 196 F.3d 1309, 1312 (11th Cir. 1999).

"Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1944); Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000). However, summary judgment is proper if the plaintiff fails to establish any element of his or her prima facie case. Wilking v. County of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998); Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000). A party opposing summary judgment must provide sufficient probative evidence which would permit the Court to rule in her favor rather

8

than engaging in conjecture and speculation. Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444, 455 (8th Cir. 1997).

Plaintiff cannot establish an essential element of her case - that she was discharged or suffered some other adverse employment action - and, therefore, summary judgment is appropriate here. *See* Celotex Corp. v. Catrett, *supra*. Where, as here, defendant did not actually terminate plaintiff's employment, plaintiff is required to demonstrate that she was constructively discharged. Bergstrom-Elk, 153 F.3d at 857.

> A constructive discharge occurs "when an employer deliberately renders the employee's working conditions intolerable," forcing [her] to quit [her] job.

Thompson v. Bi-State Development Agency, 463 F.3d 821, 825 (8th Cir. 2006) (quoting Smith v. World Ins. Co., 38 F.3d 1456, 1560 (8th Cir. 1994)).

> An objective standard applies to constructive discharge claims, i.e., a constructive discharge takes place only when a reasonable person would find working conditions intolerable. "Part of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too fast."

Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 869 (8th Cir. 2008) (citations omitted). "An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged." West v. Marion Merrell Dow, Inc., 54 F.3d 493, 498 (8th Cir. 1995).

A constructive discharge claim "requires considerably more proof than an unpleasant and unprofessional environment." Jones v. Fitzgerald, 285 F.3d 705, 716 (8th Cir. 2002). A working atmosphere may not be ideal, but "'a feeling of being unfairly criticized or [having to endure] difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" (internal marks omitted) (alteration in original). Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1160 (8th Cir. 1999).

I find that defendant's notice to plaintiff that she had used nearly all her PTO in the first quarter of the year and had no additional days of paid leave the rest of the year does not convert plaintiff's decision to quit into a constructive discharge. The undisputed facts show that defendant counseled plaintiff about the number of absences even before plaintiff took any time off for pregnancy related matters. Despite being told that she had very little paid time off left if

9

she wanted to reserve five days to cover her STD maternity leave waiting period, plaintiff took three additional days off (one of which was unscheduled). She was reminded again that she had only one day paid time off left. Again, at this time, none of plaintiff's paid absences were related to pregnancy. The evidence is clear that at no time did defendant even imply that plaintiff would not be allowed to take paid maternity leave when her baby was born.

A reasonable person who had taken nearly all of her yearly allotted leave by the middle of May, much of it for non-emergency reasons, would not find it intolerable to be reminded of the fact that she had little or no PTO left. Even if a reasonable employee could infer that her employer would not tolerate further unscheduled absences, plaintiff was required to return to work after her pregnancy related absence instead of quitting.

## ORDER

Plaintiff has failed to show that a genuine issue of material fact exists as to whether defendant terminated her employment or caused plaintiff to suffer some other adverse employment action. There are no genuine issues of material fact. Plaintiff has failed to make out a prima facie case and the motion for summary judgment should be granted.

Now, therefore,

IT IS ORDERED:

1. Defendant's motion, Doc. 32, to strike is denied.
2. Defendant's motion, Doc. 20, is granted.
3. This matter is dismissed with prejudice and without costs.

Dated this 19th day of January, 2010.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: DEPUTY
(SEAL)